FOX v. KINGSLAND, Commissioner of Patents.

No. 2877—47.

United States District Court
District of Columbia.

Dec. 14, 1948.

434

Howard Nelson Moore and William D. Hall, of Moore & Hall, both of Washington, D.C., for plaintiff.

W. W. Cochran, Sol., U. S. Patent Office, of Washington, D. C., for defendant.

TAMM, District Judge.

This is an action brought by a former employé of the Patent Office to compel the Commissioner of Patents to reinstate in the files of the Patent Office the plaintiff's application for a patent upon an invention in the field of radiant energy. The plaintiff asks for additional relief in the form of authorization to the Commissioner of Patents to issue a patent to the plaintiff and to find that the plaintiff is not barred from obtaining a patent on the aforesaid application, or any of its claims, by reason of the fact that the invention, upon which the application was based, was conceived by the plaintiff at a time when he was employed in the Patent Office. The defendant, the Commissioner of Patents, had, prior to the initiation of this suit, refused to consider the plaintiff's application for a patent and had precluded the plaintiff from carrying his patent application through the established channels of review in patent procedure, by ruling that the plaintiff was not eligible to apply for a patent. The defendant's posi-

tion is predicated upon 35 U.S.C.A. § 4, which provides:

"All officers and employees of the Patent Office shall be incapable, during the period for which they hold their appointments, to acquire or take, directly or indirectly, except by inheritance or bequest, any right or interest in any patent issued by the office."

There is no dispute between plaintiff and defendant as to the facts in the case. The testimony indicates that the plaintiff, the holder of a Bachelor of Science degree in Physics, with a major in electrical engineering, began employment in the U. S. Patent Office in 1931. In January of 1942, the plaintiff filed an application with the War Department for appointment to a position as radio engineer. The War Department, Signal Corps Radar Laboratory, on February 14, 1942, advised the plaintiff by letter that they were in urgent need of qualified radio engineers and would be anxious to secure his services provided a release could be obtained from the Department of Commerce for plaintiff's transfer to the War Department. It appears that the Patent Office opposed the plaintiff's transfer for some time but by letter of May 16, 1942, the Chief Personnel Officer of the Patent Office notified the Director of the War Transfer Unit of the Civil Service Commission that the previous objection to the transfer of the plaintiff to the Signal Corps was withdrawn. On June 10, the plaintiff was notified by the Signal Corps Radar Laboratory at Belmar, New Jersey, that he should report for duty on June 29, 1942 prepared to go to work. The plaintiff, upon receipt of this letter, signed the appropriate section thereof, stating, "I will report for duty as requested above" and returned the letter to the Signal Corps. On June 10, the Signal Corps also sent a telegram to plaintiff advising him to report for duty on June 29th.

On June 11, 1942, the plaintiff prepared his resignation addressed to the Commissioner of Patents and, by his own testimony, took it on that date to W. N. Adams, Acting Personnel Officer of the Department of Commerce, who approved the resignation and signed it at the point designated for his signature. Mr. Adams then returned the resignation to the plaintiff who

retained it in his possession. On June 15, 1942 the plaintiff left active duty at the Patent Office, but was carried upon the Patent Office payroll in a terminal-leave status until June 28, 1942. During the period between June 15 and June 28, it appears that the plaintiff prepared the patent application which he subsequently filed.

On June 29, 1942, the plaintiff was sworn in as an employe of the Signal Corps Radar Laboratory at Belmar, New Jersey. After being sworn in on this date, he mailed to the Patent Office his application for the patent which is the subject-matter of this litigation. At approximately the same time, on June 29th, he mailed to the Commissioner of Patents, his resignation from the Patent Office which, as indicated above, had been prepared and approved on June 11th. The plaintiff's testimony indicates that within a few weeks after his entry on duty in the War Department, he discussed his invention with the War Department Engineers and it appears that the War Department indicated interest therein.

The plaintiff's patent application was given Serial #449121, and a filing date of June 30, 1942. On November 14, 1944 the Primary Examiner allowed certain claims in the patent application and on December 7, 1944 the Commissioner of Patents declared an interference identified as Interference No. 81787, Stewart v. Alvira v. Fox, in which the plaintiff Fox was the senior party. On December 29, 1944, the plaintiff Fox filed a preliminary statement in the interference proceeding in which he admitted that he had conceived the invention in question while he was an employe of the Patent Office. On November 2, 1945, before the taking of testimony in the interference proceeding, Stewart, a party in the said proceeding, moved for summary against the plaintiff Fox, on the ground that Fox was precluded by 35 U.S.C.A. § 4, supra, from ever receiving a patent on his application. The Examiner of Interferences denied the motion for summary judgment and after various other incidental proceedings, the Commissioner of Patents, on September 25, 1946, on an ex parte basis, rendered a decision holding that the plaintiff's patent application should be stricken from the files of the U. S. Patent Office because the application was filed in contravention of 35 U.S.C.A. § 4. The plaintiff's petition for reconsideration by the Commissioner of Patents was denied.

Thereafter the plaintiff attempted to appeal from the ruling of the Commissioner of Patents to the Board of Appeals of the U. S. Patent Office, but on January 17, 1947, the Board of Appeals dismissed the appeal for lack of jurisdiction in view of the striking of the application from the files by the Commissioner of Patents. On April 2, 1947, the plaintiff Fox petitioned the Secretary of Commerce to review and correct the decision of the Commissioner of Patents and on June 2, 1947, the Secretary of Commerce dismissed this appeal on the ground that the Commissioner's decision was quasi-judicial in character and not a proper one for review by the Secretary of Commerce. Plaintiff thereafter petitioned the Commissioner of Patents to direct the Board of Appeals to consider the plaintiff's appeal and to render a decision thereon, but the Commissioner of Patents denied this petition.

Plaintiff testified at the hearing of this case that he first conceived the idea for the invention in 1940 while attending the convention of Institute of Radio Engineers. He further testified that his invention consists of a novel arrangement of old components, none of which are in the field in which he worked at the Patent Office. The testimony indicated that the plaintiff had access to all applications pending in the Patent Office which were in the field of his invention. The defendant's counsel stipulated, however, that there was no question of appropriation in this case and consequently, as a factual matter, this stipulation precludes any suggestion that the plaintiff's invention was predicated upon his misuse of any information in the Patent Office to which he had access.

The plaintiff's contract with the Signal Corps of the War Department provided that he was bound by that contract to assign to the Government all inventions in the field involved, made by him during his employment by the Signal Corps, which employment, as previously pointed out, began on June 29, 1942. The plaintiff claims that he was not, at the time he filed his

application for this patent or the two derivative claims filed subsequently thereto, an employe of the Patent Office within the provisions of 35 U.S.C.A. § 4, previously quoted, and that consequently the defendant is without authority to strike his patent application from the files or to take any action to preclude the plaintiff's patent application from being considered upon its merits as of the date of its initial filing.

The defendant justifies his action in the case and opposes the plaintiff's claim upon the principal that the statute previously quoted precludes the plaintiff, as an employe of the Patent Office, from "acquiring or taking, directly or indirectly * * * any right or interest in any patent issued by the office." To sustain the defendant's position, he refers specifically to the provisions of 35 U.S.C.A. §§ 44, 46. § 44, insofar as it is related to the plaintiff's position provides that:

"Patents may be granted and issued or reissued to the assignee of the inventor or discoverer; but the assignment must first be entered of record in the Patent Office. * * *"

§ 46, insofar as it relates to the plaintiff's position provides that:

"When any person, having made any new invention or discovery for which a patent might have been granted, dies before a patent is granted the right of applying for and obtaining the patent shall devolve on his executor or administrator, in trust for the heirs at law of the deceased, * * *."

The Commissioner of Patents contends that these two sections establish that an "interest in a patent" exists before any application is filed for the patent and that the prohibition in § 4 against Patent Office employes acquiring any right or interest in any patent issued by the office, relates not alone to the filing of the application but to the processes of invention and preparation preceding the filing of the application. The defendant consequently contends that the statutory prohibition against a Patent Office employe acquiring an interest in a patent extends not only to the period of filing the application but also to all necessary preliminary steps.

Counsel for the Commissioner of Patents urges this Court to uphold the Commissioner's action in this case on the ground that Patent Examiners occupy a "fiduciary relationship" in all patent matters. Counsel further urges judicial approval of the defendant's action, in his brief supporting his oral argument, on the ground that the patently resulting danger from permitting Patent Office employes to resign from their employment and apply for patents is contrary to the "spirit" of § 4 as cited above. In his brief he states:

"For the reasons given, it is submitted to be clear that the only reasonable interpretation of the language of R.S. § 480 [§ 4, T. 35] is that no Patent Office employee can ever obtain a patent on the basis of anything done during his employment. Moreover, this interpretation is rendered necessary not only by the letter of the statute but also by its spirit.

"It is obvious that the reason for the prohibition contained in R.S. § 480 is the fact that Patent Office employees have certain advantages with respect to patents which it would be unfair to permit them to capitalize. One of the most important of the advantages is the right of access to pending applications for patent which, in accordance with Patent Office Rule 15 [35 U.S.C.A.Appendix] are 'preserved in secrecy' so far as the public is concerned. This advantage applies especially to examiners, whose work daily brings them into contact with these secret files. As was indicated by the Commissioner, the action of an examiner in preparing, before he had left the Patent Office, an application for patent on an invention examinable in the same division in which he was employed, and in mailing this application to the Office at the same time as his formal resignation, is not one which is calculated to inspire the public with confidence in the integrity of the Patent Office.

"This is not to be construed as an insinuation that the present plaintiff is knowingly seeking to appropriate the inventions of others. There is no evidence here that would support such a charge. But in a situation of this kind it is almost as important to avoid the appearance of evil as the evil itself. Confidential employees such as

examiners should be above suspicion, and an assertion by a former examiner that, while he had daily access to secret applications of others in a certain field, he independently made an invention of his own in the same field, will almost certainly be regarded with suspicion, however unfounded such suspicion might be in any particular case."

At a later point in his brief, defendant's counsel points out that:

"In the present case the basic invention of the plaintiff's original application is in the field of radiant energy, classified in the Division of the Patent Office in which he was employed and in which he had access to all pending applications at the time when he made the invention, and he admits that he had made no inventions in this field prior to such employment. The conclusion that the invention resulted from his employment is, therefore, inescapable, and, under these circumstances, he should not be entitled to obtain a patent.

"It should be noted that an examiner, who has the benefit of all the most recent and confidential developments in the field in which he works is in a peculiarly favorable position to make inventions. He is familiar with the work of many independent inventors who can have no knowledge of each other's work and may, by combining suggestions made by such inventors, make inventions which they could scarcely have made independently. In effect, he is in advance of the art by as much time as normally elapses between the filing of applications and the publication of patents, which time is now several years. Obviously, in making an invention, he cannot exclude these confidential disclosures from his mind and accordingly, whatever his intentions, he enjoys an unfair advantage over other inventors. It would clearly be contrary to the spirit of R.S. § 480 to allow him to capitalize this advantage at the expense of the inventors who are required to make confidential disclosures to him."

A careful consideration of the provisions of §§ 44 and 46 of Title 35 indicates clearly that they relate to rights in an *invention* which may be assigned or which may pass to his heirs, and the assignee, executor or administrator may initiate application for a *patent*. The statute appears clearly in these sections as in others to recognize a real distinction between rights in an invention and rights in or to a patent.

The prohibition in § 4 of Title 35 is specifically against an employe of the Patent Office "during the period for which they hold their appointments" taking any "right or interest in any *patent issued* by the office." (Emphasis supplied.) The plaintiff has, by his creative ability, developed an interest in an invention—a conception of an invention—which, apart from the question as to his rights as an employe of the Patent Office, he might, if a private citizen, assign under § 44 of T. 35, or which under § 46 of T. 35, supra, would pass to his heirs at law. This interest, it appears, is clearly in an *invention* and not in a *patent*. The fact that the plaintiff drew up his application prior to his removal from the Patent Office payroll but did not then file it with the Patent Office does not change his interest from one in an invention to one in a patent. An executed but unfiled application is only evidence of conception. King v. Young, 100 F.2d 663, 670, 26 C.C.P.A.Patents, 762. It is further authoritatively stated that "an application for a patent dates from its filing in the patent office and not from the day of its execution by the applicant. Walker on Patents, Vol. 2, § 162, p. 741, Deller's Edition. It follows that the plaintiff has not, in the opinion of this Court, acquired "during the period for which he held his appointment" as an employe of the Patent Office acquired any interest directly or indirectly in a patent and his application for a patent, filed after the complete termination of his employment in the Patent Office, must be considered by the Commissioner of Patents strictly upon its merits, and in the same manner as if the application were filed by a person who had no prior employment in the Patent Office.

Defendant's brief refers to the fact that plaintiff's contract with the Signal Corps bound him to assign to the Government "All inventions in the field here involved made by him *during* his employment by the Signal Corps" (Emphasis supplied). The *invention* having admittedly been made by plaintiff before his entry on duty in the Signal Corps, there is no contractual re-

sponsibility in the plaintiff to assign his rights in this *invention* to the Signal Corps in the absence of some subsequent independent and voluntary action taken by him to do so. The plaintiff's position in this regard is not before the Court in this suit, nor is any question directly raised as to plaintiff's position under the provisions of 35 U.S.C.A. § 45, Government Employe Act.

The facts in this case are readily distinguishable from those in Page v. Holmes Burglar Alarm Tel. Co., C.C.N.Y. 1880, 1 F. 304. The case of Foote v. Frost, C.C. Mass.1878, Fed.Cas.No.4,910, upholding the right of a former Commissioner of Patents to acquire a patent for an invention made by him while holding office is, of course, not binding on this Court. Defendant's contention that it may be distinguished because of the fact that it applied to a Commissioner of Patents while the present case applies to a former Examiner of Patents, ignores the fact that the statute here involved does not distinguish between any echelon of Patent Office employes but applies to all without exception.

This Court is not unmindful of the potential danger involved in allowing Patent Office employes to resign and immediately thereafter to file an application for a patent. Whether there should be an express statutory restriction establishing the time which should elapse before ex-employes of the Patent Office may apply for patents is a question for Congressional consideration. In the words of the Supreme Court, "The courts ought not to declare any such policy; its formulation belongs solely to the Congress." United States v. Dubilier Condenser Corp., 289 U.S. 178, 198, 53 S.Ct. 554, 561, 77 L.Ed. 1114, 85 A.L.R. 1488.

In the light of the foregoing, the defendant should reinstate the plaintiff's application in the files of the U. S. Patent Office to the same status it had prior to the Commissioner's order striking said application from the files of that office. The Court further directs the defendant to consider the plaintiff's application and all claims therein strictly upon their intrinsic merits and their patentability as of the date of their initial filing.

Counsel will prepare and submit proposed Findings of Fact and Conclusions of Law, together with appropriate Order.